**E. W. BLAIN, Plaintiff in Error,**

v.

**FIRST NATIONAL BANK IN WELLINGTON, TEXAS, and Argie Jones, Defendants in Error.**

No. 35981.

Supreme Court of Oklahoma.

Oct. 12, 1954.

Rehearing Denied Nov. 9, 1954.

Newlin Jones, Sayre, Harry Bunnenberg, Vernon, Tex., Carder & Carder, Hobart, for plaintiff in error.

Wise & Ivester, Sayre, for defendants in error.

ARNOLD, Justice.

The First National Bank of Wellington, Texas, brought this action in the District Court of Beckham County upon a promissory note in the amount of $6,130 executed by defendant Argie Jones on August 6, 1951, and to foreclose a chattel mortgage given by Jones as security therefor upon 51 Hereford cows branded "V/" on left hip, and alleged that defendant Blain was claiming some right or interest in the cattle covered by the mortgage which was inferior and subject to the bank's mortgage lien.

Defendant Argie Jones filed answer and cross petition admitting the execution and delivery of the promissory note and chattel mortgage on April 21, 1951, and renewal thereof on August 6, 1951, and alleging that he was the owner of the cows described in the mortgage by reason of an oral contract between himself and his father-in-law, defendant Blain, in fulfillment of which on about January 1, 1950, Blain had given Jones a 5,000 acre ranch in Beckham County, the legal title to which, though owned by Blain, stood in the name of Blain's daughter, Jones' wife, together with all the cattle on the ranch; that on or about June 27, 1951, Blain took possession of all the cattle on the ranch, including the 51 head described in the mortgage, and prayed for judgment against defendant Blain quieting his title to said 51 head of cows, subject to plaintiff's mortgage lien.

Defendant Blain filed a general denial to the petition and cross petition.

The uncontroverted evidence shows that Blain owned a 5,000-acre ranch in Beckham County, legal title to which had been in his daughter's name for many years prior to her marriage; that after his daughter married Jones, in about 1942, Blain hired Jones to manage the ranch and Jones and his wife moved on the ranch; that with Blain's permission Jones sold cattle off the ranch from time to time; that Blain paid all expenses of operating the ranch, reimbursing Jones for any amounts advanced by him; that during the time Jones operated the ranch he bought and sold cat-

tle of his own and that Jones had his own brand; that the V/ slash brand was Blain's brand and registered in his name in the public records both in Texas and Oklahoma; that Blain had never done business with plaintiff bank and had never even had an account there; that Jones had had numerous dealings with plaintiff bank in the past, sometimes borrowing money on his open note and sometimes giving a chattel mortgage as security; that on previous occasions when Jones had mortgaged cattle to plaintiff bank the cattle were described as bearing a backward N brand and not the V/ brand as did the cattle here in question; that Blain did not know of the various transactions which Jones had had with plaintiff bank; that the plaintiff bank loaned $6,000 to Jones on April 21, 1951, and took from him the chattel mortgage on the 51 head of cows here in question on Jones's representation that he owned the cows; that the loan was made solely on the strength of Jones' credit and not by reason of any acts, representations, or conduct of Blain; that the bank made no inquiry before loaning the money to see whether or not Jones really owned the cattle he was mortgaging to the bank; that the bank renewed the note in August, 1951; that thereafter the plaintiff learned that Jones was no longer at the ranch, and upon making inquiry of the new ranch foreman learned that Jones had no cattle on the ranch; that on or about June 27, 1951, at the request of Blain Jones and his wife deeded the ranch back to Blain and that Jones left the ranch a short time thereafter; that Blain learned about the mortgage to plaintiff bank sometime in May, 1951, but did not advise the bank that he, not Jones, was the owner of the cows until upon inquiry from the bank his ranch foreman so advised the bank.

The controverted evidence is that defendant Jones claimed that he went on the ranch in 1942 under an agreement with Blain that at some time to be fixed by Blain he and his wife would be given the ranch and cattle thereon; that in January, 1950, Blain told Jones he didn't want to be bothered with the ranch any longer and that from then on the ranch and all the livestock would belong to Jones and his wife; that

thereafter Jones treated the cattle as if he owned them himself, buying and selling the cattle, buying feed and incurring other expenses in connection with their maintenance; that in October, 1950, he borrowed $6,400 from Clinton Production Company, giving a mortgage on some calves as security therefor, and used some of the money to buy cattle, some to buy feed, and some to buy a new automobile and a new truck for himself; that in April, 1951, he borrowed $6,000 from plaintiff bank, intending to buy some cattle, but being unable to buy the cattle he applied $5,000 of the money in paying off his note and mortgage with Clinton Production Company and expended the balance on expenses incurred at the ranch; that he had borrowed money twice at Wellington State Bank, in which Blain owned some stock, upon Blain's authorization, giving as security a mortgage on some of Blain's cattle, and had borrowed from Clinton Production Company upon Blain's authorization so to do; that he had never asked for nor obtained permission to borrow money for Blain from plaintiff bank; that he considered he owned the cows when he borrowed the money from the plaintiff bank and gave the mortgage in question.

Blain's evidence, however, tends to show that he hired Jones to run the ranch as a ranch foreman at a salary of $75 per month in 1942; that he never made an agreement, as alleged by Jones, to give Jones the ranch and cattle; that he never at any time authorized Jones to borrow money and mortgage his cattle as security therefor; that he paid all the expenses on the ranch at all times, introducing numerous cancelled checks in corroboration; that at times he allowed Jones to sell some cattle and retain the proceeds to use in defraying expenses on the ranch; that in about October, 1950, Jones asked to borrow $300 or $400 and he told Jones that he did not have the money to lend; that Jones then said that he could get that much on his open note with Clinton Production Company; that he did not learn that Jones had borrowed $6,400 from Clinton Production Company and had given a mortgage on some calves as security until about May, 1951, when he asked Jones about it; that he thereafter learned of the

mortgage which Jones had given to plaintiff bank; that he received none of the proceeds of any of the loans which Jones had made; that Jones had sold approximately $10,000 worth of cattle off the ranch in the early part of 1951 without his knowledge and had never accounted to him for the proceeds; that after learning of the mortgages which Jones had placed on his cattle he demanded that Jones and his wife execute a deed placing the record title in his name, which they did; that in 1950, to facilitate making out income tax returns, he set up an account in the First National Bank of Chillicothe in his daughter's name, giving her checking authority thereon, and depositing therein various rentals from other lands which he owned, and told his daughter to write the necessary checks on that account to pay for the expenses of operating the ranch and Jones' salary, which she did, thereby having a complete record to support the income tax report; that all of the money in this account belonged to him but he was letting his daughter handle it; cancelled checks from this account showing payment of expenses incurred on the ranch as well as Jones' salary during 1950 and 1951 were introduced in evidence; that he knew Jones bought some cattle of his own from time to time while he was managing the ranch and also some hogs but these cattle did not have Blain's brand on them and Blain had nothing to do with them; that all of the cattle now on the ranch were born and branded at his ranch in Texas and all of them wear his brand, the V/.

At the close of the evidence plaintiff asked permission to amend the petition to plead estoppel against defendant Blain. The court refused this request on the ground that if the testimony offered on the subject was competent that the pleadings would be considered amended to conform to the proof, and overruled Jones' demurrer to Blain's evidence, plaintiff's demurrer to Blain's evidence, and Blain's motion for a directed verdict.

The court found in favor of plaintiff and against defendant Jones on the note and mortgage and in favor of defendant Blain as against cross petitioner Jones, but found that Blain was estopped to deny the validity of the chattel and rendered judgment foreclosing the mortgage and ordering the personal property sold to satisfy the indebtedness. Separate motions for new trial of defendants Jones and Blain were both overruled. Defendant Blain alone appeals.

Defendant Blain contends that estoppel was not plead and it was error to allow such issue to be injected into the case; that even if estoppel were properly an issue in the case the evidence is insufficient to establish any estoppel against defendant Blain in asserting his ownership of the cattle; that the only issue presented by the pleadings and the evidence was the ownership of the cattle which was decided in Blain's favor and from which judgment neither plaintiff bank nor Jones appealed.

Assuming without deciding that the court did not err in considering the pleadings amended to conform with the proof so as to raise the question of estoppel, the uncontroverted evidence is wholly insufficient to establish any estoppel against Blain. The essential elements of equitable estoppel, all of which must concur in the transaction, are not present. It is clear from the testimony of plaintiff bank that Blain made no representation to it of any kind. The bank loaned the money to Jones upon Jones' representation that he owned the cattle and because of previous satisfactory business dealings had with Jones. No act, conduct, language, or silence of defendant Blain had anything to do with inducing plaintiff to make the loan to Jones. Blain had never done business with plaintiff bank and plaintiff bank knew nothing of Blain's credit rating or financial worth. Because Blain learned of the mortgage sometime in May or June and did not notify the bank that he was the owner of the cattle described in the mortgage, and thereafter in August the bank renewed the note, which it says it would not have done had it known Jones was not the owner of the security which he had pledged, cannot help the bank in asserting estoppel. The bank was placed in no worse position by renewing the note. The loan was made and the mortgage taken as security in March. Knowledge of the deception practiced by Jones prior to the

renewal of the note would only have accelerated by a short time the bank's attempt to collect the indebtedness and would not have given the bank any better security than it already had. The evidence is conclusive that the bank was not misled as a direct result of any conduct or statements of Blain. It therefore cannot claim the benefit of estoppel. Atchison, T. & S. F. Ry. Co. v. W. B. Johnston Grain Co., D.C., 113 F.Supp. 396.

The bank contends, however, that regardless of whether it can claim estoppel against Blain that Blain received the benefits of the money borrowed by Jones and in equity should be required to restore the money to plaintiff. In this connection plaintiff states that the evidence shows that Jones used a part of the money borrowed from it to pay off a mortgage which he had given to Clinton Production Company on some of Blain's calves and used the rest of the money to pay expenses incurred at the ranch. As shown above, Jones stated he borrowed $6,400 from Clinton Production Company and used the money to buy cattle for himself, feed for them, and a new automobile and truck for himself. It is clear that he used all the proceeds of that mortgage for his own benefit, and when he paid off that indebtedness with a part of the money borrowed from plaintiff he was benefitting himself, not Blain. The testimony is uncontradicted that Blain paid all of the expenses of the ranch and that he received no benefits or proceeds from any of mortgages made by Jones without his knowledge.

The judgment of the trial court that Blain is estopped to deny the validity of the chattel mortgage is clearly against the weight of the evidence. The cause is reversed with directions to enter judgment in favor of defendant Blain against plaintiff bank.

HALLEY, C. J., JOHNSON, V. C. J., and WILLIAMS and BLACKBIRD, JJ., concur.

CORN and DAVISON, JJ., dissent.